# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**THOMAS WASHINGTON,**                                                                                 **PLAINTIFF,**

**VS.**                                             **CIVIL ACTION NO. 4:05CV184-P-B**

**AMERICAN HERITAGE LIFE**
**INSURANCE COMPANY and**
**EXAMINATION MANAGEMENT**
**SERVICES, INC., D/B/A INTERNATIONAL**
**CLAIMS SPECIALISTS A/K/A ICS**
**MERRILL,**                                                              **DEFENDANTS.**

## **MEMORANDUM OPINION**

This matter comes before the court upon Defendant American Heritage Life Insurance Company's Motion for Summary Judgment [74]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### **I. FACTUAL BACKGROUND**

Ola Washington purchased a $100,000 life insurance policy from American Heritage naming her husband Thomas Washington as the beneficiary.

On November 19, 2003 Ola Washington executed a voluntary statement with the Verona, Mississippi Police Department that her husband Thomas had stabbed her with a knife. She received treatment at the North Mississippi Medical Center. Thomas Washington, who claims it was Ola who had the knife and she was stabbed while they were scuffling over it, was arrested and placed in jail for two weeks.

On December 20, 2003, a month after the knife wound, Ola Washington died in her bed. At that time Ola lived in her home with her husband Thomas and Shoenda Townsend, one of her daughters born prior to her marriage to Thomas.

On December 22, 2003 Townsend called American Heritage requesting a death claim form. Townsend spoke with Claudia Osborne, team leader in the Claims Department, and advised Osborne that Ola Washington had died on December 20, that no death certificate had yet been issued, and gave Osborne the phone numbers to the funeral home and the Verona Police Department. Osborne sent a letter to Townsend enclosing a claims form and instructions on what was needed to make a claim for the death benefits. On the same day or on the next day, Osborne avers that she spoke with Allen Brewer, the insurance agent for Ola Washington's policy, who told her that Ola's death was a homicide and that she had been stabbed by her husband Thomas, the beneficiary.

On August 31, 2004 Townsend called American Heritage's Customer Service Department requesting another copy of the claims form. American Heritage sent a new form on that same day.

On November 3, 2004, eleven months after Ola Washington died, American Heritage received a Claimant's Statement filled out by Thomas Washington, along with a death certificate and a Statement to Amend Cause of Death. In the Block 28 of the death certificate for cause of death were the words: "Pending Autopsy Report." In Box 25(a) of the attached Statement to Amend Cause of Death, the cause of death was listed as "Severe Cardiomegaly." In Box 26 of the Statement to Amend Cause of Death, which covers "Other Significant Conditions," the Lee County medical examiner wrote: "ASCHD, Pulmonary vascular congestion." Thus, the attached official forms to the claims form indicated that Ola's death was due to natural causes. However, on the actual Claimant Statement filled out by Thomas Washington, the cause of death in Box 11 was written as "Internal

2

Bleeding." Furthermore, in response to Box 23, "Describe Accident in Detail," Thomas Washington wrote "Internal Bleeding Resulting from Knife Wound." In response to Box 24 which asked "What injuries were sustained," Thomas Washington wrote "Improper Medical Procedures."

Because of the conflicting causes of death between the death certificate and Thomas Washington's own words, combined with the knowledge that Ola Washington had been stabbed a month prior to her death and her husband and the beneficiary of her life insurance proceeds had been arrested for the stabbing, American Heritage decided to investigate the claim further given that a beneficiary who was involved in the insured's death is prohibited by Miss. Code Ann. § 91-1-25 from receiving the life insurance proceeds.

On November 10, 2004 American Heritage hired International Claims Specialists (ICS) to investigate the claim, asking ICS to obtain a copy of the police report and outcome of the trial of Thomas Washington. During the investigation, which took approximately six months, ICS determined from Desiree Kershner at the Verona Police Department that although Thomas Washington had been charged for aggravated assault in relation to the stabbing, he had not been indicted by the Grand Jury because by the time the case went before them, Ola Washington had died. Kershner also indicated on at least two occasions that she and the Police Department believed that Thomas Washington should be tried for the stabbing. Kershner also indicated that the Police Department was awaiting the results of the autopsy report to confirm or deny the cause of death.

American Heritage received approximately nine status reports from ICS regarding the investigation. Essentially, American Heritage and ICS were waiting for the results of the autopsy and toxicology reports and had difficulty obtaining the proper authorization forms from Thomas Washington because he had changed his address and phone number without informing American

3

Heritage. On February 7, 2005 American Heritage sent a letter to Thomas Washington requesting he sign the enclosed authorization form to obtain the autopsy report at his original address but received no reply. Two days later, American Heritage mailed a duplicate letter to Thomas Washington's new address after Shoendra Townsend called to inform American Heritage of his address change. American Heritage received the signed authorization form on March 14, 2005 and sent it along to ICS on March 21, 2005. On April 21, 2005 ICS reported to American Heritage that the North Mississippi Medical Center had rejected the autopsy report authorization form because it had been filled out incorrectly. American Heritage requested that ICS contact the next of kin to obtain the proper form. On May 6, 2005 ICS reported to American Heritage that it had sent the new form to Thomas Washington. On May 16, 2005, American Heritage noted that ICS sent the letter to the old address. On May 31, 2005 ICS faxed the new form to American Heritage who in turn sent it to Thomas Washington's new address.

Before American Heritage received the proper authorization form, and before they ever received the autopsy report, Thomas Washington filed suit against American Heritage and ICS.

In his Amended Complaint, Thomas Washington asserts the following claims: (1) tortious breach of contract; (2) breach of fiduciary duty and duty of good faith and fair dealing; (3) negligence; (4) gross negligence; and (5) intentional infliction of emotional distress. The damages claimed are the loss of use of the $100,000.00 proceeds of the life insurance policy, the foreclosure of Thomas Washington's home, and emotional distress. For all of the causes of action, the plaintiff seeks punitive damages, while not requesting compensatory damages.

After the plaintiff filed suit, American Heritage received the autopsy report during discovery on December 12, 2005. On December 30, 2005 American Heritage paid Thomas Washington

$106,140.34, the amount of the insurance proceeds plus interest.

After receipt of the subject insurance proceeds, the plaintiff now asserts that his causes of action are based on the defendants' alleged willful and unreasonable delay of payment.

Defendant American Heritage filed the instant motion for summary judgment, arguing that the plaintiff has failed to establish any genuine issues of material fact warranting a trial in this matter given that their reasons for the delay of payment were legitimate and reasonable since they were actively investigating the claim. American Heritage argues that it was reasonable to suspect foul play given Thomas Washington's own words in the Claimant Statement and given he had been arrested for stabbing the insured one month before she died. American Heritage also avers that the investigation was prolonged due to their inability to obtain a copy of the autopsy report, based in large part on Thomas Washington's failure to inform them of his change of address.

The plaintiff responds that their delay in payment was not reasonable and that the defendants acted callously and without regard to the plaintiff's rights. He argues that: (1) the policy requires "timely and satisfactory proof of death" which is routinely satisfied by a death certificate; (2) the medical examiner's conclusion on the death certificate of natural causes trumps anything Thomas Washington said on the claims form since he is not qualified to opine regarding causes of death; (3) American Heritage should have investigated the claim themselves and not hired ICS to do it; and (4) ICS's contact with the Verona Police Department revealing that the Grand Jury did not indict Thomas Washington, combined with the death certificate's conclusion that Ola Washington died of natural causes, should have been satisfactory proof that Thomas Washington did not cause the insured's death.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection*

*Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Standards Regarding Insurance Bad Faith Punitive Damages**

In *Caldwell v. Alpha Ins. Co.*, 686 So.2d 1092, 1096 (Miss. 1996), the Mississippi Supreme Court observed that in determining whether a case should be presented to a jury for punitive damages based on a bad faith insurance claim, "[t]he trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issue of punitive damages." Furthermore, the Fifth Circuit has held that whether the plaintiff has offered sufficient

evidence to create a jury issue on either or both prongs of the punitive damages analysis is a question of law to be answered by the court. *Sobley v. Soutnern Natural Gas Co.*, 210 F.3d 561, 565 (5th Cir. 2000)

As stated above, the plaintiff in this case does not seek compensatory damages (no doubt because the plaintiff has been paid the subject insurance proceed), but rather seeks punitive damages. Therefore, in assessing American Heritage's motion for summary judgment, the court must keep in mind heightened standards regarding punitive damages. *See* Miss. Code Ann. § 11-1-65 (requiring plaintiff to prove "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." ); *Life & Casualty Ins. Co. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988) ("In the specific context of insurance litigation, this Court has held that 'any plaintiff asking for punitive damages or any special or extraordinary damages based on bad faith of an insurance company has a heavy burden.'").

"Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort. ... As such, punitive damages are allowed only with caution and within narrow limits." *Caldwell*, 686 So.2d at 1095. "To recover punitive damages from an insurer for "bad faith", the insured must prove by a preponderance of evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." *Id.* at 1095-96. "If the insurer had a legitimate or arguable reason to deny payment of the claim, then the trial judge should refuse to grant a punitive damage instruction. Arguable reason is defined as 'nothing more than an expression indicating the act or acts of the

8

alleged tortfeasor do not rise to heightened level of an independent tort.'" *Id*. at 1096.

**<u>C. Analysis</u>**

All of the plaintiff's causes of action – breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, negligence, gross negligence, and intentional infliction of emotional distress – depend on the core allegation that American Heritage acted with malice or reckless disregard to the plaintiff's right to receive his wife's life insurance proceeds because they unreasonably delayed payment of those proceeds.

It can be said with little analysis that the plaintiff's claim for breach of fiduciary duty fails as a matter of law since "[t]here is no fiduciary obligation between the insured and the insurer, that is an arm's length contract between two parties." *Estate of Jackson v. Mississippi Life Ins. Co.*, 755 So.2d 15, 24 (Miss. Ct. App. 1999).

The primary issue for the court to determine in ruling upon American Heritage's motion for summary judgment is whether the plaintiff has presented sufficient clear and convincing evidence creating a genuine issue of material fact as to whether American Heritage had a legitimate or arguable reason to delay payment of the claim

The Courts in *Caldwell* and *Pilate v. American Federated Ins. Co.*, 865 So.2d 387 (Miss. Ct. App. 2004) have recognized a cause of action for bad faith delay in paying insurance proceeds.

In *Caldwell*, the Mississippi Supreme Court affirmed the trial court's ruling that the insurer's six-week delay in paying insurance proceeds while investigating the claim did not constitute an independent tort or gross negligence supporting a punitive damages award for bad faith. *Caldwell*, 686 So.2d at 1098. The Court observed that "Mississippi law imposes a duty upon insurers to 'conduct a reasonably prompt investigation of all relevant fact.'" *Id*. at 1097.

9

In *Pilate*, the Mississippi Court of Appeals concluded that a one-year delay caused by investigation could not support a punitive damages award, determining that the insurer's reasons proffered for the period of the investigation were reasonable. The Court in *Pilate* concluded:

> *Caldwell* does not establish a six week rule of thumb. Instead, *Caldwell* provides that an insurer's conduct does not amount to gross negligence or an intentional tort as long as the insurer is actively investigating a claim. AmFed's explanation of its investigation was sufficient to determine that neither AmFed's nor Guillory's conduct rose to the level of gross negligence or an independent tort. There were no genuine issues of material fact in dispute to assert that AmFed's or Guillory's actions were willful, intentional, maliciously wrong or in reckless disregard of Pilate's rights.

865 So.2d at 400-401.

Importantly, the Court in *Pilate* also ruled that "an insurer's conduct does not amount to gross negligence or an intentional tort as long as the insurer is actively investigating a case." 865 So.2d at 400.

Because the facts discussed above are essentially undisputed, the court concludes that even after viewing the facts in a light most favorable to the plaintiff, the plaintiff has not demonstrated by clear and convincing evidence the presence of a genuine issue of material fact warranting a trial with regard to the core issue of whether American Heritage and ICS were reasonably active in investigating the plaintiff's claim.

It is undisputed that the plaintiff was arrested for stabbing his wife, the insured, a month before she died. It is undisputed that the insured in fact sustained a knife wound. It is undisputed that the plaintiff himself wrote on the claim form that he believed the cause of death was "Internal Bleeding Resulting from Knife Wound." Even though the death certificate attached indicated a natural cause, given American Heritage's knowledge of the beneficiary's alleged stabbing of his wife, no reasonable juror could conclude that American Heritage acted with malice, gross

10

negligence, or reckless disregard for the plaintiff's rights in wanting to investigate the claim further. It is undisputed that a death certificate can be amended; therefore, no reasonable juror could conclude that American Heritage acted with malice, gross negligence, or reckless disregard in wanting to review the autopsy report.

It is undisputed that Miss. Code Ann. § 91-1-25 and *Gholson v. Smith*, 48 So.2d 603 (1950) provides that a person who caused the death of an insured may not recover the insurance proceeds, that "Mississippi law imposes a duty upon insurers to 'conduct a reasonably prompt investigation of all relevant facts,'" *Caldwell*, 686 So.2d at 1097, and that a claimant has a duty to cooperate and assist in the investigation and resolution of a claim. *Pilate*, 865 So.2d at 400.

The delay in receiving the autopsy report was due in part to the plaintiff's failure to inform them of his address change. It is undisputed that the plaintiff did not inform American Heritage of his change of address or phone numbers before they sent out the first letter containing the autopsy report authorization form. Furthermore, it is very significant that shortly after American Heritage finally received the autopsy report on December 12, 2005 during the discovery phase of this case, they paid the plaintiff the insurance proceeds with interest on December 30, 2005.

Finally, the plaintiff cites no authority for the proposition that there is anything inherently improper for an insurance company to hire an outside investigation firm to conduct an investigation on a claim.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the plaintiff has not met his burden in proving by clear and convincing evidence that there is a genuine issue of material fact warranting a trial on any of his claims seeking punitive damages. Accordingly, American Heritage's motion for

summary judgment should be granted and the plaintiff's claims against American Heritage should be dismissed with prejudice.[1] Accordingly, a Partial Final Judgment shall issue forthwith,

**THIS DAY** of July 25, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The other defendant in this action, International Claims Specialists, did not file a joinder in American Heritage's motion for summary judgment. Thus, the court's ruling currently applies only to the plaintiff's claims against American Heritage.